NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0435n.06

Case No. 22-1943

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BLUE CROSS BLUE SHIELD OF MICHIGAN,   )

    Plaintiff / Counter Defendant - Appellant,   )

    )

v.   )

    )

INTERNATIONAL UNION, UNITED   )
AUTOMOBILE, AEROSPACE AND   )
AGRICULTURAL IMPLEMENT WORKERS   )
OF AMERICA, LOCAL 1791,   )

    Defendant / Counter Plaintiff - Appellee.   )

    )

    )

**FILED**
Oct 12, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; CLAY and LARSEN, Circuit Judges.

SUTTON, Chief Judge. After Blue Cross Blue Shield of Michigan fired Travis Moore, the applicable collective bargaining agreement permitted his union to grieve the firing. An arbitrator set aside the discharge and imposed a 30-day suspension. The district court upheld the arbitrator's decision. We affirm.

I.

Travis Moore works as a claims specialist for Blue Cross Blue Shield of Michigan. In 2019, he missed work on September 3, 4, and 5. On the last day, Blue Cross discharged him. Moore's union, the United Automobile Workers, took issue with the firing, and the parties submitted the dispute to arbitration in accordance with the requirements of the relevant collective

bargaining agreement. Under those rules, the parties selected Betty Widgeon, an approved arbitrator from the American Arbitration Association, to arbitrate the case. The parties asked the arbitrator to determine whether Blue Cross had just cause to fire Moore.

As Moore and the union saw it, the firing was not justified. He claimed that he had already been excused from work for the three consecutive days he missed, all leading up to his scheduled time off for shoulder surgery and recovery. Prior to his absences, Moore left messages with his manager saying he needed time off and he submitted some paperwork to the third-party administrator on August 28, August 29, and September 3 about the upcoming disability leave and the need for time off. He also talked with the third-party medical claims company and his doctor to get his medical paperwork submitted. But the paperwork did not arrive until after he had been fired, precluding him from filing it before the surgery and the three days immediately preceding it. He also submitted a doctor's note after the fact that supported the leave.

As Blue Cross saw it, Moore failed to do what he was supposed to do—report to work each day or call his employer each of the three days he missed work. It noted that he no longer had leave under the Family Medical Leave Act after August 20, 2019, and his disability leave for the shoulder surgery did not start until September 6, 2019. Under these circumstances, Blue Cross maintained that it had just cause to fire him under the labor agreement, which says that employees "shall lose their seniority and employment rights" if they are "absent for three consecutive working days without properly notifying [Blue Cross] of the reasons for such absence, unless it was not reasonably possible to do so." R.1-1 at 56–57.

2

The arbitrator held a virtual hearing on November 19, 2020. During the hearing, the parties had the opportunity to offer witnesses, cross-examine them, introduce exhibits, make arguments, and submit post-hearing briefs. The arbitrator issued her decision on March 1, 2021. In that decision, she agreed that Moore failed to follow the labor agreement by not supplying the proper notice for each missed day of work. But she concluded that Blue Cross's decision to fire Moore "was excessive" and was not required by the collective bargaining agreement. R.14-6 at 6. She downgraded Moore's punishment to a 30-day suspension. Unhappy with the arbitrator's decision, Blue Cross asked the arbitrator to reconsider. The arbitrator initially changed her mind, but a few weeks later she issued an order standing by her original decision.

Blue Cross filed this lawsuit in the Eastern District of Michigan, asking the court to vacate or modify the arbitration award. *See* 29 U.S.C. § 185. Both parties filed motions for summary judgment. The district court granted the union's motion and enforced the arbitrator's decision, relying on the highly deferential review that applies to judicial review of arbitration decisions. Blue Cross appealed.

## II.

We review a labor arbitration decision under "one of the narrowest standards of judicial review in all of American jurisprudence." *Tenn. Valley Auth. v. Tenn. Valley Trades & Lab. Council*, 184 F.3d 510, 515 (6th Cir. 1999) (quotation omitted). When an arbitrator is "resolving any legal or factual disputes," we uphold the arbitrator's award as long as she was "arguably construing or applying the contract." *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc). In making that call, "we review outcomes, not opinions." *Id.* at 755. That means we "focus" on a "fair process, not substance, unless the substance of the interpretation is so off the wall that it makes implausible the idea that the arbitrator

3

was engaged in interpretation in the first place." *Zeon Chems., L.P. v. United Food & Com. Workers*, 949 F.3d 980, 982 (6th Cir. 2020).

As a matter of process, the arbitrator listened to testimony offered by both sides, considered the exhibits that included the relevant labor agreements, and heard the parties' factual and legal arguments. In her six-page decision, she stated that the "crux of the matter" before her was "what the [labor] agreement required" and "what was actually done" by Moore. R.1-3 at 4. The arbitrator quoted from the labor agreement and concluded that Moore "failed to comply" with it by missing three days of work without properly notifying Blue Cross. *Id.* at 6. But given "the totality of circumstances," including competing provisions of the labor agreement, she concluded that firing Moore would be "excessive" and that a 30-day suspension was the more appropriate penalty. *Id.* at 6. Part of that analysis turned on the finding that Blue Cross had departed from its customary practices in this area by imposing multiple disciplinary actions for what amounted to a single string of absences. *See Beacon J. Publ'g. Co. v. Akron Newspaper Guild, Loc. No. 7*, 114 F.3d 596, 601 (6th Cir. 1997) ("[a]rbitrators commonly utilize past practice" in contract interpretation). All told, the arbitrator acknowledged that her job was to construe and apply the contract, and she proceeded to do that in her opinion.

As a matter of substance, the arbitrator's decision was not "so off the wall that it makes implausible the idea that the arbitrator was engaged in interpretation." *Zeon Chems.*, 949 F.3d at 982. There are at least four relevant provisions in play. Start with § 8.11.3 of the labor agreement, the main provision on which Blue Cross relies. It says that employees who miss "three consecutive working days without properly notifying" Blue Cross "shall lose their seniority and employment rights." R.1-1 at 56–57. One reading of that provision would require that employees like Moore be fired and thus forfeit *all* their employment rights. But other provisions make that reading less

obvious. The Attendance Standards Policy says that a "[f]ailure to notify leadership during three consecutive workdays *may* result in termination of employment." R.13-5 at 2 (emphasis added). In discussing discipline in general, moreover, the labor agreement permits firings only "for just cause" and disfavors "the more severe disciplinary penalties of suspension and/or discharge . . . until lesser penalties, aimed at correction, are first utilized." R.1-1 at 69. The decision to reduce Moore's severe penalty to a lesser one shows an arbitrator focused not just on the language of § 8.11.3 but on trying to reconcile all of the relevant provisions, including the employer's past practices under the agreement. *See Beacon J. Publ'g Co.*, 114 F.3d at 601. Even § 8.11.3 by the way is not as clear as Blue Cross suggests. It leaves open the possibility that an employee absent for a trio of days could lose some "employment rights" without losing all employment rights. Otherwise, why worry about the reference to losing "seniority," which normally contemplates continued employment? At all events, the relevant question is not what *we* would do with this interpretive dilemma. The parties after all bargained for an arbitrator to decide the case. Our only job is the modest one of ensuring that no fraud occurred, that the matter was subject to arbitration, and that the ultimate decision was not so "off the wall" as to deny that the arbitrator was engaged in interpretation.

Blue Cross raises two counterarguments. It says that the arbitrator's failure to cite and analyze one provision (that employees "shall lose their seniority and employment rights") shows that she was not engaged in construing or applying the contract. R.1-1 at 56–57. True, "quot[ing] from and analyz[ing] the pertinent provisions" is good evidence that an arbitrator was engaged in construing and applying the contract. *Mich. Family Res.*, 475 F.3d at 754. But doing so is not a requirement. On the contrary, "arbitrators have no obligation to issue a written decision to justify their awards," much less an obligation to cite and quote every portion of the contract they are

5

interpreting. *Id.* at 755. That is because "we review [arbitration] outcomes, not opinions." *Id.* The outcome, as just shown, is not so "egregious" that it must be "vacated." *Id.* at 753.

Blue Cross next points to the arbitrator's modified decision, where she changed her mind and seemed to think that the labor agreement required that Moore be fired. Even though that decision was subsequently vacated, Blue Cross claims that the arbitrator's change of course indicates that her initial decision was untethered from the labor agreement. We disagree. For one, an initial change in course may confirm that the arbitrator had an admirable quality in decision making: an open mind. The capacity to reconsider a decision by itself does not reveal any of the telltale signs of an arbitration decision gone sorely awry. For another, even if the change of heart and mind suggests an error in her decision, that does not suffice. "[J]udicial intervention should be resisted even though the arbitrator made serious, improvident or silly errors in resolving the merits of the dispute." *Mich. Family Res.*, 475 F.3d at 753 (quotation omitted).

We affirm.